# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**HOWARD GOLDFINGER, individually
and on behalf of all others similarly situated,**

      Plaintiff,

     -vs-                              Case No. 15-C-12

**JOURNAL COMMUNICATIONS INC.,
STEVEN J. SMITH, DEAN H. BLYTHE,
DAVID J. DRURY, JONATHAN NEWCOMB,
MARY ELLEN STANEK, OWEN J. SULLIVAN,
JEANETTE TULLY, THE E.W. SCRIPPS COMPANY,
SCRIPPS MEDIA, INC., DESK SPINCO, INC.,
SCRIPPS NP OPERATING LLC, DESK NP
MERGER CO., DESK BC MERGER LLC,
BOAT SPINCO, INC., BOAT NP MERGER CO., and
JOURNAL MEDIA GROUP,**

      Defendants.

## DECISION AND ORDER

      Howard Goldfinger brought this action on behalf of common stockholders of Journal Communications Inc. alleging violations of the Securities Exchange Act in connection with the proposed merger between Journal Communications and the E.W. Scripps Company. The defendants are organized into two groups, designated the Journal Defendants and the Scripps Defendants. Both groups of defendants move to dismiss. Goldfinger moves for expedited discovery and to set a briefing schedule on a yet-to-be-filed motion for a preliminary injunction. For the reasons that follow, the defendants'

motions to dismiss are granted, and Goldfinger's motion for expedited discovery is denied as moot.

## BACKGROUND

On July 30, 2014, Journal Communications and Scripps entered into a Master Transaction Agreement ("Master Agreement"). Under the terms of the Master Agreement, Journal Communications and Scripps will spin off and merge their respective newspaper businesses, and then Journal Communications will merge with and into a wholly owned subsidiary of Scripps. The Proposed Transaction will result in the formation of two separate public companies: (1) Journal Media, which will continue the companies' newspaper businesses; and (2) Scripps, which will continue the companies' combined broadcast businesses. In connection with the Proposed Transaction, each share of outstanding Journal Communications Class A and Class B common stock will be converted into 0.5176 Scripps Class A common shares and 0.1950 shares of Journal Media common stock, resulting in Journal Communications stockholder ownership of approximately 31% of the common shares of Scripps and 41% of the common shares of Journal Media.

On November 20, 2014, Scripps filed with the SEC a Preliminary Joint Proxy Statement/Prospectus (Form S-4) regarding the Proposed Transaction. The initial filing was reviewed and commented on by the SEC and then amended by the 205-page Preliminary Proxy, which was filed on December 23,

2014. The Preliminary Proxy states that the information contained therein is "subject to completion or amendment," that it does not "constitute an offer to sell or the solicitation of an offer to buy" securities, and that it does not become effective until "such date as the [SEC] … may determine." Declaration of Douglas M. Poland, Ex. A. After its filing on December 23, the Preliminary Proxy was again reviewed and commented on by the SEC and amended on three separate occasions — on January 16, January 28, and February 6, 2015. A Definitive Proxy Statement (Schedule 14A) was filed with the SEC On February 6. On March 11, 2015, approximately 82% of the Company's outstanding Class A and Class B shares voted for the Proposed Transaction, compared to 3.5% that voted against, with the remainder abstaining.

On August 11, 2014, less than two weeks after the Proposed Transaction was announced, Goldfinger filed a class action lawsuit challenging the Proposed Transaction in the Circuit Court of Milwaukee County. Goldfinger asserted process-based breach of fiduciary duty claims against Journal Communications and the Individual Defendants[1] and aiding and abetting breach of fiduciary duty claims against Boat Spinco and the Scripps Defendants on behalf of the same putative class of Journal

---

[1] The Individual Defendants are Steven J. Smith, Dean H. Blythe, David J. Drury, Jonathan Newcomb, Mary Ellen Stanek, Owen J. Sullivan, and Jeanette Tully. Smith is the Chairman of the Board and CEO of Journal Communications. The remaining Individual Defendants are Journal Communications directors.

Communications stockholders that Goldfinger purports to represent in this federal lawsuit. As here, Goldfinger also sought to enjoin the Proposed Transaction. On November 12, 2014, Circuit Court Judge Richard J. Sankovitz held that certain of plaintiff's claims failed to state a claim and entered summary judgment on others, dismissing the complaint in its entirety. Poland Dec., Ex. C.

Goldfinger did not appeal the dismissal of his complaint in state court, nor did he attempt to re-file there. Instead, Goldfinger brought the instant lawsuit, alleging four separate claims: (1) a claim against Journal Communications, the Individual Defendants, and Scripps for alleged violations of Section 14(a) of the Securities Exchange Act based on the December 23, 2014 Preliminary Joint Proxy Statement/Prospectus; (2) a claim against the Individual Defendants for control person liability under Section 20(a) of the Exchange Act; (3) a state law breach of fiduciary duty claim against the Individual Defendants; and (4) a state law aiding and abetting breach of fiduciary duty claim against Boat Spinco and the Scripps Defendants.

## ANALYSIS

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and

draws all inferences in the nonmoving party's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). At the same time, Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal* at 678.

## I.     Section 14(a) of the Exchange Act

Section 14(a) of the Exchange Act (and Rule 14a-9 promulgated thereunder) prohibits the solicitation of proxy statements:

> containing any statement which is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

15 U.S.C. § 78n(a). To state a claim under § 14(a), a plaintiff must allege that: (1) the proxy statement contained a material misstatement or omission; which (2) caused plaintiff's injury; and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384-85 (1970). An omitted fact is "material" if there is "a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). This standard contemplates "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.*

In addition, the Private Securities Litigation Reform Act (the "PSLRA"), which was enacted "to curb frivolous, lawyer-driven litigation," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), imposes specific pleading requirements for private action securities cases. As relevant here, the PSLRA provides that a complaint alleging an untrue statement of material fact or a material omission "shall specify each statement alleged to

have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). This heightened pleading standard applies to § 14(a) claims. *Beck v. Dobrowski*, 559 F.3d 680, 681 (7th Cir. 2009).[2]

Goldfinger alleges that the Proxy is materially incomplete and misleading because it failed to disclose potential conflicts of interest involving Methuselah Advisors, LLC and its role in the process, certain financial information including annual cash flow projections, and the identity of certain "advisors" and the nature of the services they provided in connection with the strategic review process leading to the merger. None of these allegations form the basis of an actionable § 14(a) claim. As further noted below, Goldfinger failed to satisfy other aspects of the PSLRA, and the mandatory review provision set forth in the PSLRA is now triggered by the dismissal.

### A.  Methuselah Advisors

In connection with the Proposed Transaction, Journal Communications hired as its sole investment banking firm/financial advisor a "little-known financial advisory firm" called Methuselah Advisors. Complaint, ¶ 43.

---

[2] A Section 14(a) claim is grounded in negligence, not fraud, so the heightened pleading standards in Federal Rule of Civil Procedure 9(b) are inapplicable. *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003).

Methuselah was also retained by the Board (i.e., the Individual Defendants) to issue a fairness opinion on the Proposed Transaction. Goldfinger alleges that Methuselah is unfit to serve as financial advisor for this transaction because it is new, small, and lightly regarded in the industry with respect to work done on merger transactions. Moreover, Methuselah cannot be considered an "independent" financial advisor because its principal, John Chachas, is a former Lazard Ltd. banker with longstanding and close ties to Scripps. While employed at Lazard, Chachas was "a senior calling officer responsible for [Lazard's] relationships with The E.W. Scripps Company." *Id.*, ¶ 45. Goldfinger further alleges that Chachas acted as broker on the Proposed Transaction and will receive a brokerage/finder's fee in addition to his financial advisory fee.

Goldfinger alleges, incorrectly, that none of this information was disclosed in the Preliminary Proxy.[3] To the contrary, the Preliminary Proxy states that the "founder and managing partner of Methuselah, who is the lead investment banker at Methuselah for Journal in the transactions, was employed by Lazard … prior to 2010 as a managing director, where he had responsibility for Lazard's relationship with Scripps." Poland Dec., Ex. A

---

[3] The focus of the complaint is the Preliminary Proxy, but the Definitive Proxy is identical in all material respects, except where noted otherwise.

(Preliminary Proxy) at 141; *see also* Ex. B (Definitive Proxy) at 142.[4]

Regarding the "historical relationship" between Journal Communications and Methuselah, the proxies state as follows:

> Methuselah in the past has provided, currently is providing and in the future may provide investment banking services to Journal and/or its affiliates for which Methuselah has received and may receive compensation, including, during the two-year period prior to the date of its opinion, having acted as financial advisor to Journal in connection with Journal's acquisition of NewsChannel 5, LLC in December 2012, for which services Methuselah received an aggregated fee of approximately $1.7 million from Journal.

Preliminary and Definitive Proxies at 97. SEC regulations require disclosure of all material relationships between a company and its financial advisor and the compensation received by the advisor for the last two years, 17 C.F.R. § 229.1015(b)(4), and this is exactly what the proxies disclose. *See Seinfeld v. Becherer*, 461 F.3d 365, 369 (3d Cir. 2006) (plaintiff must show that "either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading").

Moreover, Goldfinger fails to explain how any of the alleged omissions rendered the proxy statements materially misleading. *See, e.g., Dixon v.*

---

[4] The Court can consider the proxy statements in deciding the motions to dismiss. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("the incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment").

*Ladish Co., Inc.*, 785 F. Supp. 2d 746, 749 (E.D. Wis. 2011) (Section 14(a) claim dismissed because "allegation, while factually specific as to what was omitted, does not allege any facts regarding what other statements became misleading or false as a result, nor *why* any such statement was misleading or false") (emphasis in original). Instead, Goldfinger vaguely asserts that the omitted information is "vitally important" to determine whether the process leading up to the Proposed Transaction with Scripps "was fair and resulted in a transaction that was in the best interests of Journal's public shareholders." Complaint, ¶ 52. *See also* ¶ 53 (omitted information "is essential in allowing shareholders to make a fully informed decision on whether to vote in favor of the Proposed Transaction"). This is not enough to pass muster under the PSLRA's heightened pleading requirements. *Beck ex rel. Equity Office Properties Trust v. Dobrowski*, 2007 WL 3407132, at *6 (N.D. Ill. Nov. 14, 2007) ("Plaintiff was required to allege not just that Defendants made such omissions, but that those omissions rendered statements that Defendants actually made misleading. Plaintiff was further required by the PSLRA to explain *how* any information allegedly omitted from the proxies had such an effect on a specific statement actually made").[5]

### B. Financial disclosures

---

[5] Goldfinger's allegations regarding Scripps' management projections are insufficient for the same reasons.

- 10 -

Goldfinger cites cases which stand for the proposition that cash flow projections are material. *See, e.g., In re Netsmart Techs., Inc. S'holders Litig.*, 924 A. 2d 171 (Del. Ch. 2007); *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A. 3d 1175 (Del. Ch. 2010). However, as other courts have recognized, this line of reasoning applies to cash-out mergers, not stock-for-stock mergers. *See, e.g., Gottlieb v. Willis*, No. 12-CV-2637 (PJS/JSM), 2012 WL 5439274, at *5 (D. Minn. Nov. 7, 2012) ("When stockholders must vote on a transaction in which they would receive cash for their shares, information regarding the financial attractiveness of the deal is of particular importance. This is because the stockholders must measure the relative attractiveness of retaining their shares versus receiving a cash payment, a calculus heavily dependent on the stockholders' assessment of the company's future cash flows") (quoting *In re Netsmart*, 924 A.2d at 200). There is no "per se" duty to disclose financial projections given to and relied on by a financial advisor. *Dent v. Ramtron Int'l Corp.*, Civil Action No. 7950-VCP, 2014 WL 2931180, at *11 (Del. Ch. June 30, 2014).

In fact, the proxy statement provides extensive financial disclosures. For example, the Preliminary Proxy contains an 8-page detailed disclosure of projected financial information related to the various forecasts and financial models provided to Methuselah. Preliminary Proxy at 98-105. Stockholders are provided revenue, EBITDA, and CapEx numbers for each of the

Company's forecasts and revenue and EBITDA numbers for each of the Company's prospective financial models. Goldfinger wants more detail, but there is no "colorable reason as to why management should be required to provide full versions of the projections underlying the already disclosed summaries." *In re 3Com Shareholders Litig.*, Civil Action No. 5067-CC, 2009 WL 5173804, at \*3 (Del. Ch. Dec. 15, 2009); *see also In re Checkfree Corp. Shareholders Litig.*, Civil Action No. 3193-CC, 2007 WL 3262188, at \*2 (Del. Ch. Nov. 1, 2007) ("a disclosure that does not include all financial data needed to make an independent determination of fair value is not … *per se* misleading or omitting a material fact. The fact that the financial advisors may have considered certain non-disclosed information does not alter this analysis").

Ultimately, Goldfinger fails to plead how the allegedly omitted information would have significantly altered the "total mix" of information made available to stockholders in the proxy statement. Goldfinger's "tell me more" pleading does not state a Section 14(a) claim because if the standard of materiality were so low, "not only may the corporation and its management be subjected to liability for insignificant omissions or misstatements, but also management's fear of exposing itself to substantial liability may cause it simply to bury the shareholders in an avalanche of trivial information a result that is hardly conducive to informed decisionmaking." *TSC Indus.*, 426 U.S. at 448-49; *see also In re Delphi Fin. Group Shareholder Litig.*, Civil Action No.

7144-VCG, 2012 WL 729232, at *18 (Del. Ch. March 6, 2012).[6]

### C. Undisclosed advisors

Goldfinger alleges that the identity of certain advisors was not disclosed. Complaint, ¶ 51. The basis for this claim is that page 63 of the proxy refers not to a single advisor, but to advisor*s*, thus implying that there may be other advisors besides Methuselah that are unknown to Goldfinger and the stockholders he purports to represent. The simple explanation is that the plural reference is to the variety of people (i.e. advisors) who work for Methuselah. In any event, Goldfinger fails to explain how allegedly withholding the identity of one or more advisors would alter the total mix of information already available to him about the transaction.

### D. Loss causation

The PSLRA provides that in any private action under the Exchange Act, "the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." § 78u-4(b)(4). Goldfinger alleges that he is "threatened with irreparable harm, rendering money damages inadequate, ..." Complaint, ¶ 71, and the complaint seeks to stop or unwind the transaction. *Id.*, Prayer for Relief, ¶ D. A plaintiff seeking only injunctive relief cannot

---

[6] Goldfinger's allegations regarding Wells Fargo's Fairness Opinion are insufficient for the same reasons.

meet the loss causation requirement. *Resnik v. Woertz*, 774 F. Supp. 2d 614, 632 (D. Del. 2011); *see also N.Y.C. Empl. Ret. Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010) ("The PSLRA does not differentiate between plaintiffs seeking legal and equitable remedies, and thus, without an allegation of economic loss, no remedy, equitable or otherwise, is available"). Goldfinger argues that but for the Proposed Transaction, stockholders would be in a position to continue to reap the economic benefits of ownership of Journal shares. The loss of those economic benefits will now be offset (and possibly overcome) by the benefit of owning stock in Scripps and Journal Media. In any event, to the extent that Goldfinger's complaint can be construed to allege economic harm (it doesn't), he fails to connect the harm to any alleged proxy misstatements. *Resnik*, 774 F. Supp. 2d at 632 (quoting *N.Y.C. Ret. Sys.*, 593 F.3d at 1023). It "should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pham., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

### E. Certification

The PSLRA also mandates that a signed and sworn certification be filed with the complaint. 15 U.S.C. § 78u-4(a)(2)(A)(i-vi). The certification must state, for example, that the plaintiff has reviewed the complaint and authorized its filing, and that the plaintiff did not purchase the security at the

meet the loss causation requirement. *Resnik v. Woertz*, 774 F. Supp. 2d 614, 632 (D. Del. 2011); *see also N.Y.C. Empl. Ret. Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010) ("The PSLRA does not differentiate between plaintiffs seeking legal and equitable remedies, and thus, without an allegation of economic loss, no remedy, equitable or otherwise, is available"). Goldfinger argues that but for the Proposed Transaction, stockholders would be in a position to continue to reap the economic benefits of ownership of Journal shares. The loss of those economic benefits will now be offset (and possibly overcome) by the benefit of owning stock in Scripps and Journal Media. In any event, to the extent that Goldfinger's complaint can be construed to allege economic harm (it doesn't), he fails to connect the harm to any alleged proxy misstatements. *Resnik*, 774 F. Supp. 2d at 632 (quoting *N.Y.C. Ret. Sys.*, 593 F.3d at 1023). It "should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pham., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

### E. Certification

The PSLRA also mandates that a signed and sworn certification be filed with the complaint. 15 U.S.C. § 78u-4(a)(2)(A)(i-vi). The certification must state, for example, that the plaintiff has reviewed the complaint and authorized its filing, and that the plaintiff did not purchase the security at the

direction of plaintiff's counsel or in order to participate in any private action under the Exchange Act. *Id.* Goldfinger failed to file this certification and completely ignored the argument in response to the motions to dismiss.

### F. Section 20(a)

This claim must be dismissed in the absence of an underlying violation of the Exchange Act. *See, e.g., Fisher v. Kanas*, 467 F. Supp. 2d 275, 284 (E.D.N.Y. 2006) ("In order to maintain a cause of action for control person liability under § 20(a), the Plaintiff must establish … an underlying violation by a control person or entity").

### G. Rule 11

At the conclusion of all private actions under the Exchange Act, the PSLRA requires courts to make specific findings as to the compliance by all parties and attorneys with Federal Rule of Civil Procedure 11(b). *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir. 1999) (citing 15 U.S.C. § 78u-4(c)(1)). Accordingly, Goldfinger and his counsel will be ordered to show cause why they should not be sanctioned under Rule 11(b). § 78u-4(c)(2) ("Prior to making a finding that any party or attorney has violated [Rule 11], the court shall give such party or attorney notice and an opportunity to respond").

## II. State law claims

In Count III, Goldfinger alleges that the Individual Defendants

breached their fiduciary duties, and in Count IV, Goldfinger alleges that Boat Spinco and the Scripps Defendants aided and abetted that breach. Goldfinger alleges that the Court has subject matter jurisdiction over these claims because the parties are completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1).[7] However, the complaint contains no allegations regarding the citizenship of Goldfinger or the Individual Defendants, and the allegations regarding the citizenship of the Scripps Defendants are generally insufficient.[8]

This may be an oversight — indeed, Goldfinger's brief explains that he is a retiree living in Chicago — but it is an important oversight because the Court cannot adjudicate claims without first assuring itself of its jurisdiction. Nor should the Court exercise supplemental jurisdiction because the normal and accepted practice is to dismiss supplemental state law claims when the federal claims are dismissed early in the litigation. *See Carr v. Cigna Sec., Inc.*, 95 F.3d 544, 546 (7th Cir. 1996) ("The general rule, when the federal claims fall out before trial, is that the judge should relinquish jurisdiction over any supplemental … state law claims in order to minimize federal judicial

---

[7] Goldfinger does not attempt to invoke jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d).

[8] For example, the complaint alleges that Scripps Operating, LLC is a Wisconsin limited liability company with an office located in Cincinnati, Ohio. 22. For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007).

intrusion into matters purely of state law"). The Court considered giving Goldfinger the opportunity to correct these jurisdictional deficiencies but will not do so because the Court would dismiss Goldfinger's claims even if jurisdiction was properly invoked. Therefore, the Court will dismiss the state law claims for want of jurisdiction.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Defendants' motions to dismiss [ECF Nos. 19, 24] are **GRANTED**;

2. Goldfinger's motion for expedited discovery [ECF No. 15] is **DENIED**;

3. Goldfinger must file a Rule 11 brief within thirty (30) days of the date of this Order. Defendants can respond within fifteen (15) days, and Goldfinger may reply fifteen (15) days thereafter; and

4. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 8th day of May, 2015.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**