# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**HOWARD GOLDFINGER, individually
and on behalf of all others similarly situated,**

        Plaintiff,

        -vs-                              **Case No. 15-C-12**

**JOURNAL COMMUNICATIONS INC.,
STEVEN J. SMITH, DEAN H. BLYTHE,
DAVID J. DRURY, JONATHAN NEWCOMB,
MARY ELLEN STANEK, OWEN J. SULLIVAN,
JEANETTE TULLY, THE E.W. SCRIPPS COMPANY,
SCRIPPS MEDIA, INC., DESK SPINCO, INC.,
SCRIPPS NP OPERATING LLC, DESK NP
MERGER CO., DESK BC MERGER LLC,
BOAT SPINCO, INC., BOAT NP MERGER CO., and
JOURNAL MEDIA GROUP,**

        Defendants.

---

## DECISION AND ORDER

---

This Court's May 8, 2015 Decision and Order dismissed claims brought by Plaintiff Howard Goldfinger ("Goldfinger") on behalf of common stockholders of Journal Communications Inc. against two groups of defendants (collectively known as "Defendants"): those affiliated with Journal Communications, Inc. ("Journal Communications") and those affiliated with the E.W. Scripps Company ("Scripps"). Goldfinger initiated the lawsuit, alleging four separate claims: (1) a claim against Journal Communications, Scripps, and the Individual Defendants for alleged

violations of Section 14(a) of the Securities Exchange Act; (2) a claim against the Individual Defendants for control person liability under Section 20(a) of the Exchange Act; (3) a state law breach of fiduciary duty claim against the Individual Defendants; and (4) a state law aiding and abetting breach of fiduciary duty claim against Boat Spinco and Scripps. This Court granted Defendant's motion to dismiss for failure to state a claim upon which relief may be granted (ECF No. 33.)

Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), this Court must perform a Federal Rule of Civil Procedure Rule 11 ("Rule 11") review of Goldfinger's claims against Defendants. The PSLRA requires the imposition of sanctions if this Court finds that Goldfinger violated Rule 11.

## BACKGROUND

The shareholder class action lawsuit arose out of the merger between Journal Communications and Scripps. Goldfinger's claims against Defendants were based on the December 23, 2014 Preliminary Joint Proxy Statement/Prospectus. The heart of the lawsuit was a Section 14(a) failure to disclose claim regarding Journal Communication's financial advisor, Methuselah Advisors, LLC ("Methuselah"). This Court granted Defendant's motion to dismiss for failure to state a claim upon which relief can be

granted, finding that Goldfinger failed to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Goldfinger did not explain how the allegedly omitted or misleading information would have significantly altered the "total mix" of information made available to stockholders in the proxy statement. Given the dismissal of the federal claims, this Court also dismissed the supplemental state law claims. *See Carr v. Cigna Sec., Inc.*, 95 F.3d 544, 546 (7th Cir. 1996) ("The general rule, when the federal claims fall out before trial, is that the judge should relinquish jurisdiction over any supplemental . . . state law claims in order to minimize federal judicial intrusion into matters purely of state law.").

## ANALYSIS

Upon final adjudication of a private security action, the PSLRA requires district courts to "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4. This provision reads, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by singing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies

- 3 -

that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

  (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

  (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

  (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

  (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The Seventh Circuit has fleshed out the Rule 11(b) criteria: "[t]here must be 'reasonable inquiry' into both fact and law; there must be good faith (that is, the paper may not be interposed 'to harass'); the legal theory must be objectively 'warranted by existing law or a good faith argument' for the modification of existing law; and the lawyer must believe that the complaint is 'well-grounded in fact.'" *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987). While the PSLRA alters the *effect* of a Rule 11(b) violation for private security actions—by mandating the imposition of sanctions if a party violates the rule—it does

- 4 -

not alter the legal standard for determining a party's compliance. *See, e.g.*, *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 866 (7th Cir. 2003). The Rule 11 standard of review is therefore the same as the PSLRA standard of review.

Since Congress passed the PSLRA in order to curb "abusive litigation by private parties," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), the primary goal of sanctions in this context is "specific and general deterrence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990). More bluntly, "[t]he very point of Rule 11 is to lend incentive for litigants 'to stop, think and investigate more carefully before serving and filing papers.'" *Berwick Grain Co. v. Illinois Dep't of Agric.*, 217 F.3d 502, 505 (7th Cir. 2000) (quoting *Cooter & Gell*, 496 U.S. at 398). An overemphasis on compensation and punishment as goals would distort the purpose of the legislation and inhibit the filing of legitimate claims. Moreover, given the effect of sanctions "beyond the merits of the individual case" and "on both the attorney's reputation" and "the vigor and creativity of advocacy by other members of the bar," sanctions should be "imposed sparingly." *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 118 (7th Cir. 1994). This Court's dismissal of Goldfinger's claims does not automatically trigger the imposition of sanctions; it is a separate inquiry altogether.

## Stage of the Case

Goldfinger first argues that the progress of the case is limited, which lends itself to a denial of sanctions (ECF No. 37.) He notes that there has been no discovery, only a single complaint filed, and only a single round of briefing on Defendant's motion to dismiss. In support of the proposition that the limited progress of the case should affect the outcome of a Rule 11 review, Goldfinger relies not on binding case law, but on persuasive authority from a neighboring judicial district. *United States ex rel. Ivanich v. Bhatt*, No. 13 C 4241, 2015 WL 249413, at \*3 (N.D. Il. Jan. 20 2015) ("The parties have not engaged in significant discovery and although the Defendants have now filed two motions to dismiss, the motions required minimal briefing.").

It is true that one of the primary justifications for the PSLRA, and Rule 11 more generally, was to diminish the increasingly costly litigation process for frivolous suits. But denying the imposition of sanctions due to the progress of the case does not comport with current law in the Seventh Circuit, nor is it the established law in the Eastern District of Wisconsin. Denying the imposition of sanctions merely because a case was dismissed early would insulate from sanctions all parties whose frivolous securities claims are dismissed. This practice defeats the purpose of the PSLRA, and

- 6 -

this Court refuses to deny sanctions simply because the Court granted Defendant's motion to dismiss at an early stage.

## Questions of Factual and Legal Support

Goldfinger's main argument in opposition to the imposition of sanctions revolves around the relationship between Methuselah and Scripps. At issue is Goldfinger's claim that Journal's proxy materials failed to adequately disclose the extent of the connection. He argues this claim is reasonably supported by fact and law, and therefore does not warrant the imposition of sanctions.

Section 14(a) of the Securities and Exchange Act prohibits the solicitation of proxy statements "containing any statement which is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 15 U.S.C. § 78n(a). An omitted fact is "material" if there is "a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). In other words, an omission is material if there is a "substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder," or, more to the point, if "the disclosure of the

- 7 -

omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.*

The central thrust of Goldfinger's complaint is that Defendants violated Section 14(a) of the Exchange Act by failing to properly disclose Methuselah's relationship with Scripps, and that such a claim is reasonably supported by fact and law. Goldfinger argues that Methusaleh's prior connection with Scripps rendered the small investment firm "irreparably conflicted" as a financial advisor and that the proxy fails to properly account for the prior relationship (ECF No. 37.) While Goldfinger concedes that the proxy mentions the prior relationship, he argues that since it was only disclosed in the context of a summary of an earlier lawsuit—140 pages into the proxy—it is inadequate. He illustrates this point by citing the passage in full:

> Members of the Board of Directors of Journal, and the parties to the master agreement, including Journal and Scripps, were defendants in a class action lawsuit filed in Circuit Court, Milwauke County, Wisconsin . . . The plaintiff also challenged Methuselah's qualifications and asserted that Methuselah has a conflict because the founder and managing partner of Methuselah, who is the lead investment banker at Methuselah for Journal in the transactions, was employed by Lazard Freres & Co. LLC ("Lazard") prior to 2010 as a managing director, where he had responsibility for Lazard's relationship with Scripps.

- 8 -

(*Id.*) Thus, Goldfinger's argument is that the *location* of a disclosure within the proxy, as much as its content, can render a statement misleading. By disclosing the nature of the relationship "only in the context of a discussion/summary of Plaintiff's litigation allegations, the impression is given that it is merely an unproven allegation in a lawsuit." (*Id.*) It is quite clear from the plain language of the document, as this Court observed in the May 8 Decision and Order, that the proxy accurately describes the relationship between Methuselah and Scripps. It traces the career path of John Chachas, Methuselah's managing partner, including his time as managing director of Lazard when he was responsible for the bank's relationship with Scripps. The information, simply put, is there. Title 15, Section 78(n), the provision of the United States Code addressing proxies, contains no guidance on the proper placement of information within a proxy. Current case law is similarly quiet on this issue. Goldfinger nonetheless claimed that disclosing the relationship in the context of previous litigation qualifies as misleading.

In light of the forgoing discussion, the question presented becomes more clear: Was Goldfinger's claim that Journal Communications inadequately disclosed the relationship between Methusalah and Scripps reasonably supported by fact and law? More directly, would a reasonable

- 9 -

investor believe that this flaw significantly alters the 'total mix' of information? The answer must be "no." The proxy describes the relationship in concrete and unequivocal terms. There is no sign of ambiguity, and Goldfinger should have been aware of this standard at the time of filing.

Goldfinger also claimed that there was a lack of disclosure regarding the "historical relationship" between Journal and Methuselah (*Id.*) Again, however, the proxy seems absolutely clear on this point:

> Methuselah in the past has provided, currently is providing and in the future may provide investment banking services to Journal and/or its affiliates for which Methuselah has received and may receive compensation, including, during the two-year period prior to the date of its opinion, having acted as financial advisor to Journal in connection with Journal's acquisition of NewsChannel 5, LLC in December 2012, for which services Methuselah received an aggregated fee of approximately $1.7 million from Journal.

(ECF No. 33.). Goldfinger claims that it is "at least ambiguous whether this disclosure referred only to Methuselah's financial advisory work on the Scripps-Journal deal." (ECF No. 37.) But what is the mention of the NewsChannel 5 deal if not an indication that Methuselah's advisory work extended *beyond* the Scripps-Journal deal? Why Goldfinger continued to press this point in its Rule 11 brief is a mystery. It certainly does not have evidentiary support.

- 10 -

A court may impose Rule 11 sanctions for arguments "that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998). Goldfinger may well believe in good faith that placing the Methuselah disclosure in a different portion of the proxy was misleading. But Rule 11 establishes an objective test by which to analyze plaintiffs' claims. *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir. 1994) (noting that an "empty head but a pure heart is no defense."). There is no objectively reasonable basis in law or fact by which to claim that the disclosure of Methuselah's relationship with Scripps was incomplete or inadequate. Goldfinger is grasping at nonexistent straws. While "Rule 11 is not directed to isolated factual errors that do not undermine a party's legal theory," it is also that case the "Rule 11 is meant to deter baseless filings in district court." *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 451 (7th Cir. 1993). These errors undermine Goldfinger's legal theory in its entirety.

Accordingly, the Court will impose a monetary sanction under Rule 11. The Seventh Circuit has ruled that awards must be limited to the amount necessary to deter misconduct. *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 709 (7th Cir. 2001). The sanction shall thus consist of

- 11 -

an award of **$5,000.00** in favor of Defendants, and shall contribute towards

the fees and expenses incurred by Defendants in this action.

Dated at Milwaukee, Wisconsin, this __4th__ day of August, 2015.

                    **SO ORDERED:**

                    _____
                    **HON. RUDOLPH T. RANDA**
                    **U.S. District Judge**